UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **IMI FUELS, LLC** ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civ. No. _____ |
| ) | |
| **INSURANCE COMPANY OF** ) | |
| **THE STATE OF PENNSYLVANIA** ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

## **COMPLAINT**

Plaintiff, IMI Fuels, LLC ("IMI"), through counsel, files this Complaint against Defendant and respectfully alleges:

### **NATURE OF THE ACTION**

1. This is a breach of contract action concerning insurance coverage. Defendant initially denied coverage for IMI's defense of a lawsuit against IMI covered under the terms of the insurance policy Defendant issued to IMI. Defendant later admitted its denial had been in error, after IMI incurred substantial costs to challenge it. In the interim period, IMI had acted as a prudent uninsured and settled the lawsuit against it. Defendant then rescinded its denial of coverage, but balked at paying IMI's defense costs and settlement amounts, requesting additional irrelevant information and delaying payment for many months. Defendant ultimately paid IMI's defense costs in December 2015, nine months after it admitted in March 2015 that the costs should have been paid, and a year-and-a-half after the first costs were incurred in Summer 2014. Defendant also, after expressly promising that the settlement amounts would be paid, reneged on

that promise – which IMI relied on to its detriment – and, for the first time, refused to pay the settlement amounts on December 8, 2015.

## PARTIES

2. IMI is a limited liability company organized and existing under the laws of the state of Delaware with its principal office at 327 Plaza Real, Suite 320, Boca Raton, Florida 33432.

3. Defendant, Insurance Company of the State of Pennsylvania ("AIG"), is, on information and belief, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal office at 175 Water Street, 18th Floor, New York, New York 10038. On information and belief, AIG is licensed to, has, and continues to do business in the state of Florida.

## JURISDICTION

4. Subject matter jurisdiction exists in this action under 28 U.S.C. § 1332 based on complete diversity of the parties and an amount in controversy exceeding $75,000.

5. Personal jurisdiction is proper over AIG in this action under the Florida Long Arm Statute, Fla. Stat. § 48.193, because, inter alia, AIG contracted to insure a person, property, or risk located within this state at the time of contracting.

6. Venue is proper pursuant to 28 U.S.C. § 1391(2) because, inter alia, "a substantial part of the events or omissions giving rise to the claim occurred" in this district, which encompasses the headquarters of IMI.

## FACTUAL ALLEGATIONS

### IMI's Purchase of the AIG Insurance Policy

7. IMI's parent company, International Materials, Inc., purchased a "Foreign Commercial Package Policy," policy number WS11004021, for the policy period May 1, 2013 to May 1, 2014 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit A.

8. IMI is a "Named Insured" under the Policy.

9. The Policy provides that AIG "will pay those sums that [IMI] becomes legally obligated to pay as damages because of bodily injury or property damage to which this policy applies." (Policy, Section I, Coverage A, Insuring Agreement.) The policy defines "property damage," in pertinent part, to include "physical injury to tangible property, including all resulting loss of use of that property." (Policy, Section V, Definitions 19, "Property Damage.") The Policy further provides that AIG "will have the right and duty to defend the insured against any suit seeking those damages." (Policy, Section I, Coverage A, Insuring Agreement.)

### The Bord Na Mona Lawsuit Against IMI

10. On or about June 30, 2014, Bord na Móna, plc ("Bord na Móna"), filed a "Statement of Claim" against IMI and additional defendant Integra Fuels SL in the High Court Commercial of Ireland, commencing a lawsuit against both defendants (the "*Bord na Móna* lawsuit"). A true and correct copy of the Statement of Claim is attached as Exhibit B.

11. The Statement of Claim alleged claims in connection with the sale and supply of 10,000 tonnes of Palm Kernel Shells ("PKS") by IMI to Bord na Móna at Dublin Port in November 2013, and the alleged nonconformance of the PKS delivered and resulting damage.

12. The Statement of Claim specifically alleged, inter alia, that "the goods supplied caused damage and/or hazard to the equipment of the Plaintiff, including without limitation the

boiler, furnace, fuel feeders, concrete slabs, lagoons, pumps and manholes at its powerplant in Edenderry." (Statement of Claim, Particulars of Loss, Damage, Inconvenience and Expense at 11 ¶ (b).) The *Bord Na Mona* suit alleged that IMI was liable for damages to Bord Na Mona for alleged third party property damage caused by the PKS that IMI sold and supplied.

### AIG's Denial of Coverage for the Bord Na Mona Lawsuit

13. AIG initially refused to undertake its insurance obligations in connection with the *Bord na Móna* lawsuit based on its assertion that "there is no allegation in the lawsuit whatsoever of consequential property damage as a result of the allegedly faulty palm kernels." (June 13, 2014 letter from AIG to IMI at 2.) A true and correct copy of the June 13, 2014 letter is attached as Exhibit C.

14. Michael Azzarelli, Complex Director at AIG's International Casualty Home Office, had, however, previously stated in an e-mail to Patrick Devlin at IMI that "Page 11/14 [of the Statement of Claim] states that there was equipment (of the plaintiff) damages . . . ." (July 2, 2014 e-mail from AIG to IMI.) A true and correct copy of the July 2, 2014 e-mail is included in the e-mail chain attached as Exhibit D.

### IMI's Actions Following AIG's Denial of Coverage

15. As a result of AIG's denial of coverage for the *Bord na Móna* lawsuit, IMI engaged coverage counsel to contest AIG's position. Counsel for IMI then sent a letter to AIG dated November 3, 2014, requesting reconsideration of its denial. That letter also informed AIG that "mediation between IMI and Bord na Mona is now scheduled for December 15, 2014," and requested that AIG "participate and be prepared to provide monetary authority in connection with the mediation." (November 3, 2014 letter from Dickstein Shapiro to AIG at 2.) The letter concluded by requesting that AIG "confirm that [it] will undertake its obligations and protect

IMI's interests." (November 3, 2014 letter from Dickstein Shapiro to AIG at 2.) A true and correct copy of the November 3, 2014 letter is attached as Exhibit E.

16. AIG responded by e-mail on November, 4, 2014, stating that AIG was "now reconsidering [its] position in this matter, and will advise you accordingly." (November 4, 2014 email from AIG to Dickstein Shapiro.) The e-mail did not respond to IMI's request for participation in the December 15, 2014 mediation. A true and correct copy of the November 4, 2014 e-mail is attached as Exhibit F.

17. AIG did not contact IMI or its counsel concerning the December 15, 2014 mediation in advance of that date, and ultimately did not participate in the mediation.

18. The mediation proved to be successful in reaching a resolution of the *Bord na Móna* lawsuit and protecting IMI, resulting in a Confidential Settlement between the parties.

19. On January 16, 2015, having still received no further response from AIG, counsel for IMI sent an additional letter requesting that AIG provide the response promised by its November 4, 2014 e-mail. A true and correct copy of the January 16, 2015 letter is attached as Exhibit G.

**AIG's Withdrawal of Its Denial and Recognition of Coverage**

20. AIG ultimately withdrew its denial of coverage by letter from its claim handler Ross Cardwell dated March 5, 2015, recognizing a duty to defend the *Bord na Móna* lawsuit. The letter acknowledged that "contaminants in the goods supplied . . . are alleged to have caused damage to customer equipment including to boilers, furnaces, fuel feeders, concrete slabs, lagoons, pumps and manholes at the [Bord na Móna] power plant in Edenderry, Ireland." (March 5, 2015 letter from AIG to IMI at 2.) The letter further stated that "[b]ased upon potential policy coverage, ISOP will undertake an investigation and defense of this matter under

a reservation of rights . . . ." (March 5, 2015 letter from AIG to IMI at 1.) A true and correct copy of the March 5, 2015 letter is attached as Exhibit H.

## AIG's Continued Failure to Pay IMI

21. Following AIG's recognition of its duty to defend, on March 24, 2015 counsel for IMI sent a letter demanding payment of the defense costs that should have been paid by AIG in connection with the *Bord na Móna* lawsuit, totaling € 229,184.27 plus £ 20,914.76, or US $326,700.56. A true and correct copy of the March 24, 2015 letter is attached as Exhibit I.

22. The March 24, 2015 letter also informed AIG of the successful resolution of the *Bord na Móna* lawsuit that IMI had reached during AIG's denial of coverage and as a result of the December mediation that AIG had been invited to but failed to participate.

23. Based on the clearly delineated categories of payments under the Confidential Settlement, IMI demanded that AIG pay IMI an additional € 381,153.73, or US $464,778.86 (using the December 23, 2014 exchange rate of 1:1.2194), for the Confidential Settlement.

24. The March 24, 2015 letter attached detailed defense invoices and a copy of the Confidential Settlement, which are excluded here because of size and for protection of confidentiality.

25. Instead of paying the defense costs and Confidential Settlement, AIG belatedly requested additional information and documentation concerning the *Bord na Móna* lawsuit, which IMI provided by letter dated August 18, 2015, despite the fact that such information was irrelevant to AIG's duty to defend or to its liability for a settlement entered during the period that AIG was denying coverage. A true and correct copy of the August 18, 2015 letter is attached as Exhibit J.

6

26.     The August 18, 2015 letter attached pleadings and certain other documents from the *Bord na Móna* lawsuit, as well as copies of e-mail updates to AIG claims handler Michael Azzarelli that had been provided throughout the course of the litigation, notwithstanding AIG's denial.  The attachments are excluded here because of size and for protection of confidentiality.

27.     In late September, more than a month after telling IMI that it was reviewing the information provided, AIG for the first time claimed that it had been unable to access the electronic attachments to IMI's August 18, 2015 letter.  IMI provided the information yet again, and again requested by e-mail and phone that the claim be promptly paid.

28.     In early October, AIG's claims handler asked IMI to identify the amounts of the December settlement that were attributable to third-party property damage.  In response, on October 7, 2015, IMI explained that the entire $464,778.86 IMI submitted for reimbursement was attributable to IMI's liability for the third-party property damage allegations made by Bord Na Mona.  Among other types of monetary damages, Bord Na Mona alleged that it incurred substantial monetary damages to stop the ongoing property damage that was allegedly caused by the PKS.  Bord Na Mona sought to impose liability on IMI for all such monetary damages.

29.     On October 9, 2015, AIG's claim handler, Ross Cardwell, informed IMI's coverage counsel by phone that AIG would be making full payment of the defense costs and Confidential Settlement amounts for which IMI had requested reimbursement from AIG in recognition that both the defense and settlement costs were covered under the Policy.

30.     On October 19, 2015, IMI's coverage counsel wrote the following in an e-mail to AIG's claim handler, Ross Cardwell:

> I write to follow-up on our last conversation on October 9, 2015, in which you confirmed that AIG would be making full payment to IMI of the outstanding defense and settlement amounts for the *Bord Na Mona* suit.  You explained during that call that the

>   payment would be made in two segments, with the first payment being targeted for the end of last week or during this week, and the second payment being made in the beginning of November.
>
>   Do you have any more specific details about when AIG anticipates sending the payments to IMI?

31.     On October 20, 2015, AIG's claim handler, Ross Cardwell, wrote the following in an e-mail back to IMI's coverage counsel:

>   I'm working ion [sic] this matter right now to trey [sic] to get a payment out to you before the end of this week. I will have a more specific update for you by tomorrow.

32.     AIG, through its claim handler Ross Cardwell, continued to promise such payments in further written and oral communications with IMI's coverage counsel between October and December 2015, as IMI repeatedly reached out to AIG for updates on the promised payments, and AIG repeatedly invented new administrative reasons for delaying payment.

33.     For example, on October 26, 2015, AIG's claim handler Ross Cardwell left a voice mail for IMI's coverage counsel, in which he stated:

>   We did run into - I did run into a bit of a glitch area in terms of processing this payment umm, but it was entirely, entirely my fault. There is an additional process that I have to go to on my end, an additional report that I have to compile, complete submit and have approved because of the amount that is involved. Apparently there are some protocols, increases of authority that when it took place that I wasn't aware of, that are amounts actually above previous amounts. So I have to submit an additional report which is going to be submitted tomorrow morning and then reviewed immediately to in order to facilitate the payment. Doesn't change anything with respect to the payment. _We agree that we are paying both indemnity and defense in this case_.

34.     On November 6, 2015, AIG's claim handler Ross Cardwell stated the following in a voice mail to IMI's coverage counsel:

>   I just wanted to give you a quick call on it as to the current status of our review. I have completed my report in connection with the reimbursement. I have submitted it to my management structure

and its met with the first line of approval. I am waiting for the last line of approval so that we can issue payment on the claim, so I'm actually hoping that I'll get that final approval by Monday after the last reviewer is actually out until Monday and if that happens, I expect that it will, we will hopefully be issuing this payment right away, so our administrative process is pretty much finished on our side. I am just waiting for the final yes for payment issuance. I'm hoping to receive it on Monday. My telephone number here sir area code 212-458-9222. Please rest assured that I am handling this matter as an absolute priority and pushing it as hard as I can on my end. And hope to have a quick resolution of it early next week. It's my understanding as per our previous conversation that you wanted to make sure that the payments were in prior before November 14. We hope to have it done well before that because you had some financial parameters in connection with that payment timeframe that I'm definitely keeping in mind here. So hopefully Monday I will have great news for you and this will all be over and any questions, please call me, 212-458-9222.

35. On November 12, 2015, AIG's claim handler Ross Cardwell stated the following in a voice mail to IMI's coverage counsel:

> Giving you a quick call on International Materials claim payment that we were talking about. The reimbursement. Just wanted to give you an update. I did speak with Patrick Devlin and Baxter Southern this afternoon and I'm hoping that I will receive actual final approval this afternoon. I expect it. And as soon as I receive final approval for payment I will let you know. But it all looks good, everything looks really really good. I think that I've gotten through the first two lines of approval. So I expect to get the nod to issue payment on this claim in just shortly. As soon as I find out I will let you know either way.

36. For two months between October 9, 2015 and December 8, 2015, AIG never once indicated that it had changed its mind and that it would attempt to avoid responsibility, in full or in part, for the amount of the Confidential Settlement for which IMI had requested reimbursement. To the contrary, AIG repeatedly reassured IMI that it would pay both the defense and indemnity portions of the claim, and that the delay was merely administrative.

37. On December 8, 2015, AIG informed IMI that it had finally issued payment for the full amount of defense costs owed. By letter on that same day, AIG denied coverage for the

9

Confidential Settlement. A true and correct copy of the December 8, 2015 letter is attached as Exhibit K. AIG sought to justify its stark about-face on its obligation to pay the settlement by asserting two frivolous arguments concerning wholly inapplicable exclusions. AIG's letter ignores its obligations under its Policy with IMI, and ignores AIG's promise to pay for IMI's liability to Bord Na Mona as a result of Bord Na Mona's alleged property damage. IMI entered into a reasonable settlement of its liability for such damages, and that settlement is covered under the Policy. AIG's denial alternatively asserted, for the first time, (1) "Damage to Impaired Property Not Physically Injured;" or (2) "Recall of Products, Work, or Impaired Property." These exclusions are not applicable and AIG's assertions are frivolous. As AIG recognized, Bord Na Mona alleged that its property was physically injured. In addition, this case did not involve any product recall. To the contrary, the case involved Bord Na Mona's allegation of damages for the costs of removing and disposing of the PKS to stop the ongoing property damage. This was not a recall. AIG has recognized in hundreds, if not thousands of cases that its general liability policies are responsible to pay damages incurred to stop ongoing property damage, and AIG's assertion of exclusions is contrary to AIG's known obligations under the Policy.

## FIRST CLAIM

### Breach of Contract

38.     Plaintiff IMI hereby repeats and realleges the allegations of paragraphs 1 through 37 above as if fully set forth more fully herein.

39.     Under the Policy, AIG undertook the duty to defend IMI against any suit seeking damages potentially covered by the Policy.

40. AIG initially denied it had a duty to defend the *Bord na Móna* lawsuit but subsequently admitted it had a duty to defend the *Bord na Móna* lawsuit.

41. During the June 13, 2014 to March 5, 2015 period that AIG denied coverage for the *Bord na Móna* lawsuit, IMI was forced to incur $327,762.41 in defense costs that should have been paid contemporaneously by AIG, but instead were not reimbursed until December 3, 2015.

42. During the period AIG denied coverage for the *Bord na Móna* lawsuit, IMI also successfully reached a Confidential Settlement of the *Bord na Móna* lawsuit as a result of a December 2014 mediation that AIG had been invited to but failed to participate.

43. AIG refused on December 8, 2015 to pay any portion of the Confidential Settlement, including the amounts in the Confidential Settlement specifically enumerated for the property damage allegations that AIG has admitted were covered.

44. Accordingly, AIG has breached its contractual duty to indemnify IMI in connection with the *Bord na Móna* lawsuit.

45. As a direct and proximate result of the foregoing breaches, IMI was deprived of the benefits of insurance coverage with respect to the *Bord na Móna* lawsuit and has suffered damages including US $464,778.86 IMI incurred to resolve the admittedly covered allegations of the *Bord na Móna* lawsuit.

## SECOND CLAIM

### Promissory Estoppel

46. Plaintiff IMI hereby repeats and realleges the allegations of paragraphs 1 through 45 above as if fully set forth more fully herein.

47. After rescinding its denial of coverage, AIG through its agents repeatedly promised IMI that payment of the amount sought by IMI for the Confidential Settlement was forthcoming.

48. IMI reasonably relied on these promises of payment to its detriment by accounting for the payment as an amount that would be received within fiscal year 2015, per the promises of AIG. If this amount is not received, then IMI's accounting for the year will have inaccuracies and the shortfall could cause IMI direct financial harm. In addition, IMI relied on the promises of payment from AIG to delay its filing of an enforcement action against AIG to enforce its rights under the Policy.

49. AIG ultimately reneged on its promises to pay the amount sought by IMI for the Confidential Settlement.

50. As a result of AIG's promise to pay the Confidential Settlement and IMI's reliance on that promise, AIG was estopped from reneging on its promise to pay. Equity requires that AIG now pay IMI the US $464,778.86 for which IMI requested reimbursement.

## THIRD CLAIM

### Misrepresentation

51. Plaintiff IMI hereby repeats and realleges the allegations of paragraphs 1 through 50 above as if fully set forth more fully herein.

52. AIG represented to IMI that its analysis of coverage for the Confidential Settlement was complete and that AIG had reached a final determination that the amounts sought by IMI for the settlement were covered by the Policy. That representation was false, as AIG ultimately denied coverage for the Confidential Settlement after making the representations.

53. AIG knew or should have known that its representations were false.

54. AIG misrepresented the status of its coverage analysis and its determination that the amounts sought for the Confidential Settlement were covered in order to induce IMI to rely on those representations, including not filing or delaying an enforcement action against AIG to enforce IMI's rights under the Policy.

55. IMI reasonably relied on AIG's promises of payment to its detriment by accounting for the payment as an amount that would be received within fiscal year 2015, per the promises of AIG. If this amount is not received, then IMI's accounting for the year will have inaccuracies and the shortfall could cause IMI direct financial harm. In addition, IMI relied on the promises of payment from AIG to delay its filing of an enforcement action against AIG to enforce its rights under the Policy.

56. As a direct and proximate result of AIG's misrepresentations, IMI has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, IMI respectfully requests that this Court:

A. Enter an order requiring AIG to pay IMI US $464,778.86 for the Confidential Settlement it incurred in the *Bord na Móna* lawsuit;

B. Enter a money judgment against AIG for US $464,778.86 on the First Claim and Second Claim, plus all sums due and owing as damages on IMI's Third Claim;

C. Award Plaintiff pre- and post-judgment interest and costs of this action;

D. Award Plaintiff reasonable attorneys' fees incurred in connection with the prosecution of this claim, to the extent permitted by law; and

E. For such other and further relief as justice may require.

## **JURY DEMAND**

IMI demands trial by jury on all issues so triable.

Date: December 22, 2015   /s/ Kellyn J. W. Muller
Kellyn J. W. Muller, Esq.
Florida Bar No.: 0103925
International Materials, Inc.
327 Plaza Real, Suite 320
Boca Raton, FL 33432
Tel:  (561) 705-0350
Fax:  (561) 395-8023
kmuller1@imius.com

Of counsel:
John Gibbons, Esq.
Kyle P. Brinkman, Esq.
**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC 20006
Tel:  (202) 420-2200
Fax:  (202) 420-2201
GibbonsJ@dicksteinshapiro.com
BrinkmanK@dicksteinshapiro.com

*Attorneys for Plaintiff*
*IMI Fuels, LLC*